NOT FOR PUBLICATION
## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
:
EARL LEE JOHNSON,                      :
                                       :
                    Petitioner,        :   Civil No. 97-4499 (FSH)
                                       :
          v.                           :   **ORDER and OPINION**
                                       :
STEVEN PINCHAK, et al,                 :   Date: June 3, 2008
                                       :
                                       :
                    Respondents.       :
_____ :


**HOCHBERG, District Judge**

This matter is before the Court on petitioner Earl Lee Johnson's application for habeas corpus relief under 28 U.S.C. § 2254.


I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner Earl Lee Johnson is presently confined at the East Jersey State Prison in Rahway, New Jersey, serving a 25 year sentence with a 25-year parole disqualifier.  Petitioner was convicted of conspiracy to promote prostitution and aggravated assault, kidnapping, promotion of prostitution, fourth degree aggravated sexual assault, terrorist threats, first degree aggravated sexual assault, two counts of unlawful possession of a weapon, and two counts of possession of a weapon for an unlawful purpose by a jury in a trial before The Honorable Michael J. Degnan, J.S.C.  Petitioner appealed his final judgment of conviction to the New Jersey Appellate Division, raising claims challenging a certain jury charge, allegedly prejudicial comments made by the judge, the jury instructions, and the admissibility of photographs of

prostitutes arrested during the sweep that resulted in the arrests of the victim and Petitioner.  In an Opinion dated July 23, 1990, the Appellate Division affirmed the conviction.  The New Jersey Supreme Court denied certification on December 24, 1990.

On October 28, 1992, Petitioner filed a pro se state petition seeking post-conviction relief ("PCR"), alleging claims of ineffective assistance of trial and appellate counsel based on counsel's failure to subpoena exculpatory evidence.  Esther M. Canty of the Public Defender's Office also filed a brief on Petitioner's behalf, in which Petitioner argued that counsel was ineffective principally because he failed to subpoena the victim's medical report.[1]  Judge Michael Degnan denied relief after a hearing on the petition on August 13, 1993.  Petitioner appealed, and on April 4, 1995, the Appellate Division filed a per curiam opinion affirming the denial of post-conviction relief.  The New Jersey Supreme Court denied certification on July 5, 1995.

---

[1]      The medical report at issue was generated by United Hospital Center following an examination of the victim, after she was allegedly raped and forced to engage in prostitution by Petitioner.  The state received only five pages of the 24-page report and the state provided the defense with these five pages.  See Part III.C.ii, infra.  The remaining pages apparently indicate that: (1) specimens taken during the exam tested negative for the presence of semen; (2) only the victim's pubic hair was found during the exam; (3) the victim was menstruating at the time of the alleged rape; (4) a rectal examination of the victim showed "good sphincter tone, no lacerations" and was negative for blood; (5) the vaginal examination was normal and there were no signs of lacerations or abnormalities; (6) upon questioning the victim stated that she had "had sexual intercourse w/4 guys (3 used condoms)"; (7) the examination revealed that the victim had suffered three bouts of gonorrhea since 1984, was admitted to the hospital for it in 1985, had a boyfriend with it, and had it in her rectum and received shots for it one month prior to the alleged rape; and (8) the examination revealed no external marks or bruises other than a two-day old scratch.

Petitioner filed this federal habeas petition on September 19, 1997.[2]  In a January 26, 1998 Order, then-District Judge Maryanne Trump Barry denied Respondents' motion to dismiss the September, 19, 1997 petition as procedurally barred and ordered Respondents to answer the petition by February 27, 1998.  Petitioner requested a stay of his federal habeas petition on January 7, 2000 because of newly discovered evidence he sought to present in state court.  On October 17, 2000 this Court administratively terminated the petition "without prejudice to the right of the parties to reopen the proceedings for good cause shown for the entry of any stipulation or order, or for any other purpose required to obtain a final determination of the litigation."

In November 2001, the Rutgers Clinic, on behalf of Petitioner, filed a motion for a new trial pursuant to New Jersey Court Rule 3:20-1.[3]  The Honorable Harold W. Fullilove, J.S.C. held five days of hearings and denied the motion in a written decision dated June 3, 2003.  Judge

---

[2]     Petitioner filed his first federal habeas petition on June 14, 1996.  On March 6, 1997, The Honorable Nicholas H. Politan dismissed the petition without prejudice for failure to exhaust all available state remedies.  Specifically, Judge Politan found that, although Petitioner had exhausted certain ineffective assistance of counsel claims, he had never presented certain claims to the New Jersey Supreme Court, including claims that (1) the prosecutor made improper comments during his summation and (2) his counsel failed to interview petitioner sufficiently, make certain motions, and object to the prosecutor's summation.  Petitioner then sought relief from the New Jersey Supreme Court, requesting (1) reconsideration of its July 5, 1995 order denying certification on the petition for post-conviction relief; (2) vacation of the Supreme Court's order denying certification; and (3) leave to file a second petition for certification nunc pro tunc so that the Court could "address legal issues that were inadvertently omitted from his last petition for Certification."  The New Jersey Supreme Court denied petitioner's's motion without opinion on June 18, 1997.

[3]     New Jersey Court Rule 3:20-1 states in relevant part that "[t]he trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice."  The new evidence at issue consisted of the recantation of the victim and the undisclosed pages of the medical report.

Fullilove found that the victim's recantation was not credible.[4]  Petitioner appealed the decision, and on May 13, 2005 the Appellate Division affirmed Judge Fullilove's denial of Petitioner's motion for a new trial.  The Supreme Court denied certification on July 11, 2005.

Petitioner then filed a motion to reopen his habeas petition in this Court, and the Court granted the motion on August 1, 2006.  Petitioner filed a motion for pro bono counsel on September 11, 2006.  The State responded to Petitioner's habeas petition on October 6, 2006 and to Petitioner's motion for pro bono counsel on October 26, 2006.  The Court denied Petitioner's request for pro bono counsel on February 9, 2007.

## II. STANDARD OF REVIEW

### A.  *Habeas Corpus*

Pursuant to 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Section 2254(d) establishes the standard for granting or denying a writ of habeas corpus. The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[4]      Judge Fullilove also concluded on the record that the medical report did not contain exculpatory evidence and that the medical report did not contradict the jury's findings. Judge Fullilove did not address this argument in his written opinion.

4

>(2) resulted in a decision that was based on an unreasonable
>determination of the facts in light of the evidence presented in the
>State court proceeding.

28 U.S.C. § 2254(d).

The first principle guiding the Court's application of 28 U.S.C. § 2254 to the facts at hand was discussed in Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  In Williams, the Supreme Court explained the proper application of 28 U.S.C. § 2254 by engaging in a two-pronged analysis of § 2254(d)(1).  First, the Court found that under the "contrary to" clause of that subsection, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id.

Second, under the "unreasonable application" clause of that subsection, the Court held that a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  The Court also held that habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  The federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under

existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

The second principle guiding the Court's application of 28 U.S.C. § 2254 is that federal courts must grant proper deference to the decisions of the state courts.  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  When applying 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, No. 99-5089, 2001 WL 1609690, at *12 (E.D. Pa. Dec. 18, 2001).  "The plain meaning of the terms ['in light of the evidence presented' in § 2254(d)(2)] suggests that a federal habeas court confine its § 2254(d)(2) review to an analysis of evidence in the record."  Id.

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.").  The Court of Appeals for the Third Circuit has held that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 256 F.3d at 198).  Federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review."  Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).  "A habeas

petitioner therefore must clear a high hurdle before a federal court will set aside any of the state court's factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

### B. Ineffective Assistance of Counsel

Several of Petitioner's claims allege that his counsel was ineffective. To prevail on a claim of ineffective assistance of counsel ("IAC"), the petitioner must satisfy both prongs of the test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. <u>Id.</u> at 687. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. <u>Id.</u> "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was [objectively] reasonable considering all the circumstances." <u>Id.</u> at 688. Second, the defendant must show that counsel's deficient performance prejudiced the defense. <u>Id.</u> at 687. This prong requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, the result of which is reliable. <u>Id.</u> The petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. <u>See id.</u> at 695-96. The Petitioner bears the burden of demonstrating both deficient performance and prejudice. <u>Id.</u> at 687.

Under <u>Strickland</u>, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 689-90. As

the Court explained "[b]ecause of the difficulties inherent in making the evaluation, a court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance. . . ."  Id. at 689.  It is petitioner's burden to overcome the presumption

that counsel's assistance was reasonable.  Id.

> For [Petitioner] to succeed . . . he must do more than show that he would have
> satisfied Strickland's test if his claim were being analyzed in the first instance,
> because under § 2254(d)(1), it is not enough to convince a federal habeas court
> that, in its independent judgment, the state-court decision applied Strickland
> incorrectly. Rather, he must show that the [state court] applied Strickland to the
> facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002) (internal citation omitted) (citing Williams, 529 U.S.

at 411).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel Claims

#### i.  Inadequate Trial Preparation

In Ground One Petitioner alleges that his trial counsel was ineffective because counsel

did not communicate with him sufficiently regarding trial preparations and strategy, and counsel

failed to obtain pre-trial discovery.  These issues were raised in Petitioner's initial motion for

post-conviction relief.  See Ex. 8 at 17; Ex. 9 at 3, Cert. ¶ 3.  Judge Degnan denied Petitioner's

IAC claims, noting that neither Petitioner nor his counsel had provided the court with anything

more than "mere speculation."  Ex. 37 at 26.  The Appellate Division affirmed Judge Degnan's

denial of Petitioner's motion "substantially for the reasons set forth in Judge Degnan's August

13, 1993 oral opinion."  Ex. 15 at 7.

Judge Degnan first announced the proper standard as set forth in <u>Strickland</u>, and then proceeded to consider Petitioner's allegations.  Petitioner alleged that counsel failed to request a copy of the grand jury minutes, <u>see</u> Ex. 9 Cert. ¶ D(4), or a copy of the victim's juvenile records, <u>see</u> <u>id.</u> ¶ D(7).  With regard to the grand jury minutes, Judge Degnan noted that "they're not allegations that these transcripts would have helped the defense in any way."  Ex. 37 at 25.  "Mere speculation" cannot meet the second prong of <u>Strickland</u>, which requires that Petitioner show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  With regard to the victim's juvenile records, Petitioner argued that counsel was ineffective because he failed to obtain the victim's juvenile records or to cross examine her on her juvenile record.  Ex. 9 at 5, Cert. ¶ D(7).  Judge Degnan rejected this argument, noting that "[j]uvenile records normally are not admissible."  Ex. 37 at 23.  Because juvenile records are generally not admissible, counsel's failure to move the court for their admission did not fall below an objective standard of reasonableness under <u>Strickland</u>'s first prong.  The Court finds that the state courts' rejection of this argument was not an objectively unreasonable application of the <u>Strickland</u> standard.

With regard to the number of meetings between Petitioner and counsel, it is well-established that "there is no established 'minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel.'" <u>Moody v. Polk</u>, 408 F.3d 141, 148 (4th Cir. 2005); <u>see also</u> <u>United States v. Mealy</u>, 851 F.2d 890, 908 (7th Cir. 1988); <u>Schwander v. Blackburn</u>, 750 F.2d 494, 499-500 (5th Cir. 1985); <u>Hassett v. Kearney</u>, No. 05-609, 2006 WL 2682823, *9(D. Del. Sept. 18, 2006).  Petitioner spoke to his attorney "a couple of times after his arrest."  Ex. 34 at 116.  Petitioner also "fails to explain

how the lack of consultation affected the outcome of the trial.  [Petitioner's] conclusory allegations regarding the time spent in consultation with his trial counsel do not show how he was prejudiced at trial, and thus his ineffective assistance of counsel claim must fail."  Mealy, 851 F.2d at 908.  The Court finds that the state courts' rejection of this argument was not an objectively unreasonable application of the Strickland standard.

### ii.  Failure to Interview Potential Witnesses

In Ground One, Petitioner also alleges that trial counsel failed to properly interview potential witnesses while Petitioner was incarcerated.  Petitioner does not specify in his habeas petition which witnesses counsel should have interviewed.  The Court assumes that Petitioner is referring to the same potential witnesses described in Petitioner's initial motion for post-conviction relief.  See Ex. 9 Cert. ¶ D(4).  In his initial motion for PCR Petitioner argued that counsel was ineffective for failing to obtain the names, addresses, and dates of birth of the other women arrested at the same time as Petitioner and the victim.  Id.  He also argued that counsel should have produced Roberta McGhee, who was arrested at the same time as Petitioner, as a witness in his defense.  Ex. 8 at 15.  Petitioner argues that the testimony of these "potential witnesses could have . . . impacted on the credibility of the State's witnesses."  Ex. 9 Cert. ¶ D(4).

Judge Degnan addressed this argument and concluded first that the nature of the possible testimony was "mere speculation."  Ex. 37 at 36.  Further, Judge Degnan noted that "it would not have made a lot of sense to call prostitutes to the stand, since that would probably have been more detriment [sic] to the defense case.  Trial strategy should not be questioned."  Id.  The

Appellate Division affirmed Judge Degnan's denial of Petitioner's motion "substantially for the reasons set forth in Judge Degnan's August 13, 1993 oral opinion." Ex. 15 at 7.

"A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991). An individual bringing an IAC claim for failure to interview a potential witness must also provide evidence of what the witness counsel allegedly failed to present would have said. "Such a showing may not be based on mere speculation about what the witnesses [counsel] failed to locate might have said." United States v. Gray, 878 F.2d 702, 712 (3d Cir. 1989). In his initial petitioner to Judge Degnan, at which time Petitioner was represented, Petitioner did no more than assert that the testimony of these witnesses "could have. . . impacted on the credibility of the State's witnesses." This concession fatally undermined Petitioner's claim because the mere possibility that the witnesses might have provided impeachment testimony falls far short – even as a matter of first impression – of demonstrating "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. As a result, the Court finds that the state courts' denial of petitioner's motion on these grounds was not an objectively unreasonable application of the Strickland standard.

iii.  Failure to File Pretrial Motions or Follow-up on Petitioner's Pro Se Motions

In Ground One Petitioner also alleges that his trial counsel was ineffective for failing to file any pre-trial motions or to follow up on Petitioner's pro se pre-trial motions. The petition does not specify which motions counsel should have filed or followed up on. The Court will

assume that Petitioner is making the same argument he made before Judge Degnan in his initial

motion for PCR.  See Ex. 9, Cert. ¶¶ D(5)-(6), (8).  Judge Degnan denied Petitioner's motion for

post-conviction relief on these grounds and the Appellate Division affirmed Judge Degnan's

decision for the reasons stated by Judge Degnan on the record.

In paragraph D(5) of the certification, Petitioner alleged IAC based on counsel's failure to

make a pre-trial motion "regarding the issue of identification."  Id. ¶ D(5).  Petitioner argued that

counsel should have moved the court for a hearing to suppress the victim's out-of-court

identification of Petitioner.  See Ex. 9 at 5.  The question is whether the identification was so

suggestive that trial counsel's failure to object to it fell below an objective standard of

reasonableness and prejudiced the defense.  In assessing Judge Degnan's analysis of this issue,

the Court must look to the Supreme Court's discussion of out-of-court identifications in Manson

v. Brathwaite, 432 U.S. 98, 114 (1977).  The Supreme Court held that

> reliability is the linchpin in determining the admissibility of identification
> testimony. . . . The factors to be considered are set out in Biggers.  These include
> the opportunity of the witness to view the criminal at the time of the crime, the
> witness' degree of attention, the accuracy of his prior description of the criminal,
> the level of certainty demonstrated at the confrontation, and the time between the
> crime and the confrontation.  Against these factors is to be weighed the corrupting
> effect of the suggestive identification itself.

432 U.S. at 114 (internal citation omitted); see also Neil v. Biggers, 409 U.S. 188, 199-200

(1972); Hindman v. Lampert, No. 03-293, 2007 WL 1053255, 8 (D. Or. Apr. 6, 2007) (applying

Brathwaite and Biggers in the context of IAC claim).

Judge Degnan's analysis closely tracks the factors enumerated in Brathwaite and Biggers.

Judge Degnan rejected Petitioner's identification argument, noting that the victim

said that she was abducted by the defendant who had a knife.  This was about one a.m. on the day in question.  She also said that the defendant was in a car and had a gun.  They went to a motel where the victim said that the defendant sexually assaulted her.  She was then taken to Pennsylvania Avenue, was threatened with death if she tried to run.  She identified the defendant as the person who did these things over a long period of time.  She was positive of the identification.  Although the defendant was the only male present at the police station, her opportunity to observe him over long periods of time negates any suggestion at issue in this case.

Ex. 37 at 26-27.  Judge Degnan properly assessed the indicia of reliability and concluded that the identification was reliable.  Because the identification was reliable, Judge Degnan concluded that trial counsel's failure to object to that identification was neither deficient nor prejudicial under the standard set forth in Strickland.

Petitioner next argued that trial counsel was ineffective for failing to make a motion to review Division of Youth and Family Services records on the victim.  See Ex. 9 at 5, Cert. ¶ D(6).  Petitioner suggested that "[t]he fact that the DYFS was involved with this 15 years old girl should have put the attorney on notice that she was not a normal teenager."  Id.  Judge Degnan conceded that the information in the victim's DYFS file might have been useful in assessing the victim's credibility, but concluded that "this appears to me to be all speculation."  Ex. 37 at 27.  In other words, Judge Degnan found that Petitioner failed to demonstrate "that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

Petitioner also argued that counsel should have moved the court to admit evidence of the victim's prior sexual activity and conduct.  Ex. 9 at 6, Cert. ¶ D(7).  Petitioner noted that evidence of this sort must be admitted on motion before trial pursuant to N.J. STAT. ANN.

§ 2C:14-7.[5]  Judge Degnan rejected this argument, noting that "I would find it hard to believe

that I would admit evidence of past conduct with reference to a young victim like this.  Consent

was never an issue here.  So this argument apparently, frankly to me has no merit."  Ex. 37 at 29.

Because Judge Degnan would not have admitted this evidence, Judge Degnan held that counsel's

alleged failure to move for its admission was neither deficient nor prejudicial under Strickland.

Finally, Petitioner argued that counsel was ineffective for failing to move to dismiss

counts 6, 7, 8 and 9 of the indictment prior to trial.  Ex. 9 at 8, Cert. ¶ D(8).  Counts 6-9 involved

vaginal penetration, of which Petitioner was not accused.  Judge Degnan considered this claim

and noted that all four charges were ultimately dismissed.  Ex. 37 at 23.  Counts 6 and 7 were

dismissed prior to opening statements.  See Ex. 33 at 12.  Counts 8 and 9 were dismissed at the

conclusions of the State's case.  See Ex. 34 at 84.  Judge Degnan noted that "it was possibly

more beneficial to the defense that [the counts] were dismissed during trial.  At this point there

was no harm to the defendant based on that."  Ex. 37 at 23.  Because there was no harm to

Petitioner as a result of counsel's failure to have these claims dismissed before trial, Judge

---

[5]        At the time of Petitioner's trial, that section read in relevant part as follows:

In prosecutions for aggravated sexual assault, sexual assault, aggravated criminal
sexual contact, or criminal sexual contact, evidence of the victim's previous sexual
conduct shall not be admitted nor reference made to it in the presence of the jury
except as provided in this section. When the defendant seeks to admit such
evidence for any purpose he must apply for an order of the court before the trial or
preliminary hearing, except that the court may allow the motion to be made during
trial if the court determines that the evidence is newly discovered and could not
have been obtained earlier through the exercise of due diligence.

N.J. STAT. ANN. § 2C:14-7 (West 1982).

Degnan found that Petitioner was unable to demonstrate "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

After reviewing each of the claims above, the Court finds that the state courts' rejection of these arguments was not an objectively unreasonable application of the Strickland standard.

### iv.  Comments by the Prosecutor

Petitioner next argues that he was denied effective assistance of counsel because his counsel failed to object to improper statements and questions made by the assistant prosecutor during the course of the trial.  Petitioner raised this issue in his initial motion for post-conviction relief before Judge Degnan and again in his motion for reconsideration to the New Jersey Supreme Court.  Judge Degnan denied post-conviction relief on this ground and the Supreme Court summarily denied certification.

Although in Ground One of his petition Petitioner does not identify specific comments made by the prosecutor, the Court will assume he is referring to those comments discussed in his initial petition to Judge Degnan, see Ex. 9, Cert. ¶¶ A – D(2); see also Ex. 22 at 13 (Petition to New Jersey Supreme Court).  In initially considering Petitioner's IAC argument on this ground, Judge Degnan laid out the proper standard as established by Strickland and considered each of petitioner's arguments.  See Ex. 37 at 21-22.  In paragraph A of the certification Petitioner alleges that his counsel improperly failed to object when the prosecutor noted that the victim's rape kit was negative because petitioner "didn't ejaculate . . . and that's why on this little piece of paper . . . it says 'negative.'" Ex. 9 Cert. ¶ A.  Judge Degnan concluded that the prosecutor was commenting on the evidence before the court and the reasonable inferences to be drawn

15

therefrom.  See Ex. 37 at 23.  Judge Degnan therefore found that counsel's failure to object to

that statement did not fall below "an objective standard of reasonableness as measured by

prevailing professional norms and considering all of the surrounding circumstances."  Strickland,

466 U.S. at 688.

Judge Degnan next considered the allegations made in paragraphs B-D(2) of the

certification.  Judge Degnan noted that on direct appeal the Appellate Division held that these

arguments did not present grounds for reversal and concluded that "I don't think the argument of

ineffective assistance of counsel has any merit in this case."  Ex. 37 at 30.  He concluded, under

Strickland's second prong, that petitioner had failed to demonstrate that "there was anything . . .

in this motion which would change the result of this case."  Id.

Petitioner does not suggest that Judge Degnan "decide[d the] case differently than [the

Supreme] Court has on a set of materially indistinguishable facts."  Id.  Because the "contrary to"

prong is unavailable to Petitioner, only the "unreasonable application" remains.  Because Judge

Degnan correctly identified the governing test as set forth in Strickland, this court may only grant

the writ if Judge Degnan "unreasonably applie[d] that principle to the facts of the prisoner's

case."  Id. at 413.  Judge Degnan considered each of Petitioner's allegations and the Appellate

Division affirmed Judge Degnan for the reasons Judge Degnan stated on the record.  This Court

finds that nothing in the state courts' consideration of this issue constitutes an unreasonable

application of the Strickland test.

v.  Improper Closing Argument

In Ground Two, Petitioner also contends that his trial counsel was ineffective for making the following closing argument to the jury:

> The police officers didn't see what happened here.  They're only telling you what she [i.e., the victim] told them.  They conveniently said that they were running – when Roberta and [the victim] were running – one officer said they were running in the same direction; another officer said it was Roberta who was kind of moving her along, moving [the victim] along – I don't know.  It seemed to me they were trying to bolster the case but I don't think they were lying; I think they were telling the truth, basically.  They had nothing to gain here.  They just wanted to come in and tell everything that happened.  Everything that happened in the report is from [the victim] so, basically, you have to consider her testimony: Was she telling you the truth or not?  Consider whether she was forced into these sexual acts.  Think about it.  She could have taken off at any time she wanted to, any time.  She chose not to.

Ex. 34 at 135.  Petitioner raised this issue in his pro se application for post-conviction relief, in the brief submitted by the public defender in support of Plaintiff's application, and again in Petitioner's motion for reconsideration to the New Jersey Supreme Court.  See Ex. 8 Br. at 1; Ex. 9. Cert. ¶ D(13); Ex. 22 at 15.

Petitioner argues that counsel's closing statement effectively advised the jury that the defendant was not credible by indicating that the police would not tell a lie.  Judge Degnan rejected Petitioner's argument, explaining that "[i]t is commonplace for defense counsel not to call the police liars during his summation or during the course of a trial, thinking that may not be beneficial to [defendant], especially if the police officers seem to be fairly credible on the stand."  Ex. 37 at 30.  As a result, Judge Degnan concluded that counsel's summation did not violate the standard set forth in Strickland, presumably because the conduct – which Judge Degnan described as "commonplace" – did not fall below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.

17

The Court finds that Judge Degnan's conclusion is supported by the record and is therefore not an unreasonable application of the test set forth in Strickland.  Counsel's closing noted only that the police officers were reporting what the victim had told them.  In so doing, counsel identified the key issue in the case: whether the victim's testimony was credible.  Counsel's decision not to accuse the officers of lying falls well within the "objectively reasonable standard" required by Strickland.  The Court finds that the state courts' rejection of this argument was not an objectively unreasonable application of the Strickland standard.

### vi. Failure to Litigate Petitioner's Defective Indictment Claim

Finally, in Ground Two Petitioner alleges that his trial and appellate counsel were ineffective because they failed to litigate his claim seeking complete or partial dismissal of the indictment on grounds that the crime of kidnapping was improperly charged.  It appears that Petitioner raised this issue in his initial pro se brief to Judge Degnan seeking PCR, see Ex. 8 at 10, but failed to raise it again thereafter.  As a result, Petitioner has not exhausted his state remedies on this claim.[6]  In spite of Petitioner's failure to exhaust this claim, the Court may address it on the merits under 28 U.S.C. § 2254(b)(2), which states that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to

---

[6]       Respondents suggest that the Appellate Division rejected this claim as procedurally barred.  See Ex. 15 5-6.  But the Appellate Division opinion is addressed to the underlying claim "that the crime of first-degree kidnapping was improperly charged in the indictment."  Id.  The Appellate Division does not discuss Petitioner's IAC claim that his counsel was ineffective for failing to pursue Petitioner's pro se motions regarding the kidnapping charge.

exhaust the remedies available in the courts of the State." Because Petitioner's claim is plainly

without merit, the Court will address it under § 2254(b)(2).[7]

It is a well-settled rule that conviction by a petit jury cures any arguable defects in a

state's grand jury proceedings. "[T]he petit jury's subsequent guilty verdict means not only that

there was probable cause to believe that the defendants were guilty as charged, but also that they

are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict,

---

[7]        In Ground Two Petitioner also appears to assert that the prosecutor failed to
provide exculpatory evidence to the grand jury and that this is grounds for habeas relief. It
appears that Petitioner is raising this claim for the first time before this Court. As with
Petitioner's claim that his trial counsel was ineffective for failing to follow up on his pro se
motions, discussed above, this claim is also without merit even if the Court assumes that the
evidence was in fact exculpatory. But see Part III.C.ii, supra (discussing the state court's finding
that the evidence was not exculpatory). The Court will therefore consider this unexhausted claim
under 28 U.S.C. § 2254(b)(2).
        The Supreme Court rejected the argument that the Fifth Amendment requires
prosecutors to provide exculpatory evidence to a grand jury in United States v. Williams. 504
U.S. 36, 51 (1992) ("The rule would neither preserve nor enhance the traditional functioning of
the institution that the Fifth Amendment demands. To the contrary, requiring the prosecutor to
present exculpatory as well as inculpatory evidence would alter the grand jury's historical role,
transforming it from an accusatory to an adjudicatory body."). Because the Constitution does not
require the presentation of exculpatory evidence to a grand jury, Petitioner's allegation fails to
assert a federal constitutional claim.
        To the extent that petitioner characterizes the prosecutor's failure to provide
exculpatory evidence to the grand jury as an ineffective assistance of counsel claim – that, for
example, his counsel was ineffective for failing to investigate or raise this issue before trial – his
claim must still fail. In 1993, a New Jersey state appellate court held that a prosecutor is
obligated to present to a grand jury exculpatory evidence in his or her possession that clearly
negates a defendant's guilt. State v. Smith, 269 N.J. Super. 86, 93, 97 (App. Div. 1993), cert.
denied, 137 N.J. 164 (1994). The grand jury proceedings which resulted in petitioner's
indictment took place on November 6, 1987. An attorney's failure to anticipate a change in
existing law does not constitute ineffective assistance. Johnson v. Armontrout, 923 F2d 107, 108
(8th Cir. 1991) ("counsel's failure to anticipate a change in existing law is not ineffective
assistance of counsel"). Inasmuch as petitioner's trial and appellate counsel cannot have been
held to the Smith standard five years before that standard was announced, petitioner has failed to
show that his trial or appellate counsel were ineffective in this regard. Because this claim is
without merit, the Court will deny habeas relief on this ground pursuant to § 2254(b)(2).

then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt."[8]  United States v. Mechanik, 475 U.S. 66, 70 (1986) (footnote omitted); see also Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).  Federal courts have repeatedly applied this rule to conclude that "[c]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."  Davis v. Mantello, 42 Fed. App'x 488, 490-91 (2d Cir. 2002), cert. denied, 538 U.S. 986 (2003).

Strickland requires that Petitioner demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. 668, 687 (1984).  Because the petit jury's verdict demonstrates that any grand jury defect was harmless, Petitioner is unable to show that the allegedly deficient performance prejudiced the defense as required by Strickland.  The Court finds that this unexhausted claim is without merit under 28 U.S.C. § 2254(b)(2).

---

[8]     In a group of cases that is particularly on point, New York federal courts have repeatedly "rejected habeas petitioners' attempts to premise ineffective assistance of counsel claims on the failure to effectuate the [New York] state statutory right to testify before the grand jury."  Lucius v. Filion, 431 F. Supp. 2d 343, 349 n.2 (W.D.N.Y. 2006) (collecting cases).  As one court noted:

> Assuming to be true petitioner's claim that counsel waived his right to appear before the grand jury without petitioner's permission, petitioner cannot demonstrate that he was prejudiced thereby.  He was afforded a jury trial and was convicted by a petit jury after testifying before it.  Any prejudice suffered by petitioner was rendered harmless by his conviction at trial by the petit jury, which assessed his guilt under a heightened standard of proof.

Turner v. Fischer, No. 01-CV-3251, 2003 WL 22284177 at *6 (E.D.N.Y. Aug. 20, 2003).  The same rationale applies to the case at bar.  Plaintiff was tried and convicted by a petit jury.  That conviction cured any defect that may have occurred before the grand jury and ensured that the result of the trial was reliable.

### B. Fundamental Fairness Claims

### I. Comments by the Trial Court

In Ground Three, Petitioner contends that comments by the trial court deprived him of his fundamental right to a fair trial. Petitioner argues that the trial court's repetitive comments to the jury concerning "quickness" were equivalent to the judge telling the jury "hurry up – he did it." Specifically, petitioner points to the first day of trial when one of the jurors expressed concern abut the trial's anticipated duration:

> JUROR NUMBER 12: One question. You said it shouldn't last beyond Monday? I just want to call my work and let them know.

> THE COURT: I think it will be over by Monday. I can't be positive, but that's a fairly good guess, I would say.

Ex. 33 at 14. Later, as the court dismissed the jury for the day, the judge noted that "the witnesses went a little quicker than we had anticipated. The next witness will be available tomorrow morning so we are moving pretty quickly." Id. at 55. Then, in requesting the jury to arrive promptly the next morning, the court stated "the quicker we start the quicker you can be finished with your service." Id. Finally, after trial testimony concluded, the court commented, "[w]e got through quicker than we thought we would. I don't think anybody minds that." Ex. 34 at 118.

Petitioner raised this issue on direct appeal to the Appellate Division and in his petition for certification to the New Jersey Supreme Court. The Appellate Division held that "these comments were harmless and did not convey to the jury, as [Petitioner] contends, the court's desire for a quick jury verdict of guilty. Here, the court's comments were directed to the relative

brevity of the testimony and not the substantive issues." Ex. 5 at 8.  The New Jersey Supreme Court summarily denied certification.

The standard Petitioner must meet in order to succeed on this claim is high.  "[A] federal court may not overturn a conviction resulting from a state trial merely because the state's action is 'undesirable' or 'erroneous'; it may only do so if such action violated a fundamental right guaranteed by the Fourteenth Amendment."  Kelley v. Hendricks, No. 03-4780, 2005 WL 2130023, 7 (D.N.J. Aug. 31, 2005) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  "[I]t is well established that denial of due process in a state criminal trial 'is the failure to observe that fundamental fairness essential to the very concept of justice. [The court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'"  Duncan v. Henry, 513 U.S. 364, 370 n.1 (1995) (alteration in original) (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)); see also Kelley, 2005 WL 2130023 at 7 ("In the context of criminal trials, the Fifth and Fourteenth Amendments' due process requirements have been interpreted to mean that criminal prosecutions "must comport with prevailing notions of fundamental fairness.'").

The Court finds that these comments were clearly directed at the speed with which trial was progressing and did not suggest to the jury "hurry up – he did it."  These comments did not "fatally infect" the trial.  See, e.g., United States v. Johnson, 657 F.2d 604, 605-06 (4th Cir. 1981) (holding that neutral comments made by a trial judge to encourage counsel to expedite trial were within the "bounds of judicial propriety").  As a result, the state courts' rejection of this argument was neither contrary to nor an unreasonable application of federal law.

ii.  Admission of Photographs

In Ground Four, Petitioner argues that he was deprived of his fundamental right to a fair trial when the trial judge admitted photographs of unidentified alleged prostitutes,[9] which, when combined with certain statements made by the prosecutor, allegedly lead the jury to conclude that Petitioner was a "pimp" and was promoting prostitution.  The photographs at issue were apparently used by the prosecutor to demonstrate that the victim did not look like the other women arrested for prostitution at the time she and Petitioner were arrested.  As for the statements, Petitioner points to the prosecutor's remark during summation that "[defendant] and his little Roberta were heading into the City to start 'turning tricks'", Ex. 34 at 144, and the prosecutor's statement that "pimps carry beepers."[10]   Taken together, Petitioner argues, the photographs and the statements led the jury to believe that the Petitioner was a "pimp" and that he was promoting prostitution.

At trial, Judge Degnan considered Petitioner's objection to the photographs and concluded that their probative value was not outweighed by their prejudicial effect.  Judge Degnan concluded:

---

[9]      The photographs at issue were apparently of other alleged prostitutes arrested in the same sweep as Petitioner and the victim.

[10]      Petitioner does not direct the Court to the "pimps carry beepers" statement.  It appears, however, that Petitioner is referring to an exchange between the prosecutor and Sergeant William Capra.  Sergeant Capra testified that he "took a beeper off [Petitioner's] person" at the time of Petitioner's arrest.  Ex. 34 at 127.  The prosecutor then began to ask "Sergeant, is it common for pimps to carry beepers on their - - - ", but before completing the question, Judge Degnan ruled, stating "I will sustain the objection."  Id. at 128.  The prosecutor then moved on to a different topic.  The prosecutor did not return to this line of questioning during her summation, and simply stated that "[t]he defendant says he did not have a beeper. Well, ladies and gentleman, here's the beeper (Indicating)."  Ex. 34 at 143-144.

23

It is clear to me the photographs show the other people who were arrested at the same time are certainly dressed much differently than [the victim] and, therefore, it has probative value. Now I have to decide whether under Rule 4 the probative value is outweighed by the prejudice that it might have to the defendant. Frankly, I don't see any prejudice to the defendant at all in showing these photographs. They are not being used to inculpate [petitioner] or to infer to the jury that [petitioner was] involved with these other girls.  There is no evidence to support that but it certainly shows [the victim's] physical appearance was quite opposite and different from that of the other girls at the time so . . . I will admit the photographs . . . for the purpose you indicated.

Ex. 34 at 68-71.[11]

Petitioner raised this issue on direct appeal to the Appellate Division and in his petition to the New Jersey Supreme Court.  See Ex. 5, at 15; Ex. 6 at 13.  The Appellate Division affirmed the trial court's ruling that the photographs were admissible under Evid. R. 4 (now N.J.R.E. 403). The Appellate Division held that "the admission of these photographs into evidence did not create a substantial danger of undue prejudice or of confusing the issues or misleading the jury. Here, the trial judge did not abuse his discretion and that decision should be accorded considerable deference on appeal."  Ex. 5 at 8-9.  The New Jersey Supreme Court denied certification.

An alleged state court evidentiary error is not of constitutional proportions – and is therefore not cognizable in a federal habeas corpus proceeding – unless the error undermines the fundamental fairness of the criminal trial.  See Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001) ("As is required in order to show that an evidentiary error of

--------

[11]    In considering Petitioner's counsel's objection to the photographs, Judge Degnan refused to admit one of the photographs, which had "Poss. Aids" written on it.  Ex. 34 at 68. Petitioner's counsel believed this phrase meant "possibility of AIDS," and Judge Degnan agreed that the photograph should not be admitted.  Judge Degnan also agreed to remove the portion of the victim's photograph which had "forced at knife-point" written on it.  Id. at 69, 71.

this type rose to the level of a due process violation, [petitioner] contends that it was of such magnitude as to undermine the fundamental fairness of the entire trial."); Sampson v. Grace, No. 06-5331, 2008 WL 687483, 19 (E.D. Pa. Mar. 11, 2008) ("Generally, a federal habeas court cannot review claims of evidentiary errors under state law, as any such mistakes 'are not considered to be of constitutional proportion, cognizable in federal habeas corpus proceedings, unless the error deprives a defendant of fundamental fairness in his criminal trial.'").  As the Supreme Court has noted, "not every trial error or infirmity . . . constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'"  Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974) (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)).  The Third Circuit noted that the court would "accord the state trial judge the deference [a federal circuit court of appeals] accord[s] . . . federal trial judges, who are in a unique position to assess the relative probative value and inflammatory effect of proffered testimony."  Lesko v. Owens, 881 F.2d 44, 52 (3d Cir. 1989), cert. denied, 493 U.S. 1036 (1990); see also Burton v. Rozum, 2006 WL 782858, 9 (E.D. Pa. 2006) (same).

As the trial court noted, the photographs at issue here were not offered as proof of Petitioner's guilt.  Rather, the photographs were admitted for the purpose of establishing whether the victim was a voluntary participant in Petitioner's prostitution operation based on her appearance and clothing on the date of the arrest.  Judge Degnan considered Petitioner's counsel's objection and excluded one photograph and a portion of another on that ground.  It cannot be said, however, that Judge Degnan's decision to admit the photographs at issue served to deny Petitioner his fundamental right to a fair trial.  The Court finds that the state courts' rejection of this argument was neither contrary to nor an unreasonable application of federal law.

Nor do the comments allegedly made by prosecutor change the Court's analysis.  As the Supreme Court has noted, it "is not enough that the prosecutor's remarks were undesirable or even universally condemned."  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  The relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 639 (1974)).  With regard to the statement made by the prosecutor during summation, the judge instructed the jury that "[i]n considering the evidence you are not to be controlled by statements made by counsel for the State nor counsel for the defendant as to their recollection of the testimony unless such statements coincide with your recollection of the testimony."  Ex. 35 at 51.  With regard to the comments about beepers, the trial court sustained an objection to the challenged question and the prosecutor did not pursue the issue.  "Although some [comments] at trial may be too clearly prejudicial for such a curative instruction to mitigate their effect, the comment[s] in this case [are] hardly of such character."  Donnelly, 416 U.S. at 644.  As a result, the Court finds that the state courts' rejection of this argument on direct appeal was neither contrary to nor an unreasonable application of clearly established Federal law.

### iii.  Failure to Instruct on "Reasonable Doubt"

In Ground Five, Petitioner claims that the trial court failed to instruct the jury on reasonable doubt.  Petitioner alleges that the trial court's failure to properly charge the jury "that a reasonable doubt may properly arise out of a lack of evidence upon some issue in the case" deprived Petitioner of his fundamental right to a fair trial.  Petitioner raised this issue on direct appeal.  Ex. 5 at 13; 6 at 13.

At trial, Judge Degnan instructed the jury on "reasonable doubt":

> A 'reasonable doubt' is an honest and reasonable uncertainty as to the guilt of a defendant existing in your minds after you have given a full and fair consideration to all of the evidence.  It may arise from the evidence itself or from a lack of evidence.  It may arise from all the evidence produced by the State and from evidence produced on behalf of the defendant, from the cross-examination of the witnesses or from the failure of the prosecution to produce essential proof.

Ex. 35 at 8.  As Judge Degnan charged the jury on each count of the indictment, he also instructed the jury that "the defendant many not be found guilty of this offense unless the State has proven each and every element of that offense beyond a reasonable doubt.  If the State has failed to prove any or all of these elements beyond a reasonable doubt, then you must find the defendant not guilty of the offense of promoting prostitution."[12]  Ex. 35 at 12 (Count III); see also Ex. 35 at 15 (Count X), 19-21 (Count I), 26-27 (Count II), 29-30 (Count IV), 31-32 (Count V), 35 (Count XI), 37 (Count XII), 39 (Count XIII), 41 (Count XIV), 43 (Count XV).  To the extent that Petitioner argues that Judge Degnan failed to instruct the jury that reasonable doubt may arise from a lack of evidence, and that this alleged failure deprived him of his fundamental right to a fair trial, Petitioner's claim is clearly unsupported by the record.  The Court finds that the state courts' rejection of this argument on direct appeal was neither contrary to nor an unreasonable application of federal law.

It appears that Petitioner is attempting to make an additional argument in Ground Five of his petition involving the judge's instruction on the charge of aggravated sexual assault.  Petitioner's argument in Ground Five is a single paragraph drawn nearly verbatim from his petition to the New Jersey Supreme Court.  See Ex. 6 at 14.  In that brief, Petitioner's counsel

---

[12]     Judge Degnan's instruction at the end of each charge differs slightly in phasing, but after each count Judge Degnan properly instructed the jury as to the State's burden.

argued that the trial court improperly treated the use of force or coercion as a circumstance "beyond the scope of intent," rather than as an element of the crime.  Ex. 6 at 14.  The Court will construe the petition broadly and assume that Petitioner's use of this language is an attempt to assert this same argument before this Court as grounds for habeas relief.  It appears that this issue was raised for the first time in Petitioner's petition for certification to the New Jersey Supreme Court on direct appeal.  Although the claim is not exhausted, it is without merit and the Court will therefore consider it under 28 U.S.C. § 2254(b)(2).

The statute defining aggravated sexual assault at the time of Petitioner's conviction read in relevant part as follows:

> An actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:
> ***
> (5) The actor is aided or abetted by one or more other persons and either of the following circumstances exists:
> (a) the actor uses physical force or coercion . . . .

N.J. Stat. Ann. § 2C14-2a (West 1983 & Supp. 1995).  As noted above, the essence of Petitioner's claim appears to be that the trial court improperly treated the use of force or coercion as a circumstantial element for which the State did not have to prove intent.[13]  Petitioner argued

---

[13]      The brief explains the argument in this way:

Although 2C:14-2a(5) refers to the use of force or coercion by the actor as a circumstance, it is incontrovertible that simple statutory enumeration of what is on its face an archetypical element, as it concerns the actor not the aider or abettor and is within the control of an actor, as instead a circumstance, does not transform said element into a circumstance beyond the scope of questions of intent, any more than simple statutory enumeration of intent itself as a circumstance could establish the motive or objective of criminal conduct as a circumstance.

Ex. 6 at 14.

to the New Jersey Supreme Court the trial court erred because the charge was not explicit that

"the State must show both: that defendant's intent was to so use force or coercion and that

defendant's intent in using said force or coercion was to attain the objective of achieving sexual

intercourse."  Ex. 6 at 14.

In order to assess this argument, the Court must first determine how the state defined the

crime and then whether the judge's instructions deprived Petitioner of due process based on the

state's definition.  As the Second Circuit has explained,

> The fact that federal habeas corpus relief does not lie for errors of state law, does
> not mean, however, that errors under state law cannot result in cognizable
> violations of a constitutional right to due process. What due process requires will
> often depend on what state law is. States are free to define the elements of, and
> defenses to, crimes. Once states have promulgated laws to define criminal
> conduct, however, federal due process protects a defendant from conviction unless
> he is shown in a fair proceeding to have violated those laws.

Vega v. Walsh, 2008 WL 4426587, *1-2 (2d Cir. 2007) (quoting Davis v. Strack, 270 F.3d 111,

123 (2d Cir. 2001)).  The question is, therefore, whether Judge Degnan's jury instructions on the

meaning of "purposely" and on the element of force "result[ed] in a violation of a defendant's

right to due process where that denial was 'sufficiently harmful to make the conviction unfair.'"

Id. (quoting Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005)).

Judge Degnan first instructed the jury as to the definition of "sexual penetration."  Ex. 35

at 13.  Judge Degnan then noted that the State had to prove beyond a reasonable doubt that

Petitioner acted "purposely."  Id.  Judge Degnan instructed the jury that this required a showing

that it was Petitioner's "conscious object to engage the same purpose required to be proven

against the person who actually committed the act of penetration . . . ."  Id. at 15.  Judge

Degnan's instruction on intent is supported by the language of the statute and did not deprive

Petitioner of due process.  The Court finds that this unexhausted claim is without merit under 28 U.S.C. § 2254(b)(2).

### C.  "Actual Innocence" Claims

#### i. Victim's Post-Trial Recantation

Petitioner argues that the post-trial recantation by the victim – the state's sole witness against Petitioner – undermines the basis for his conviction and entitles him to habeas relief. This claim first arose in 2000, at which time this Court stayed the petition in order to allow Petitioner to present his claim of actual innocence to the state courts.  Judge Fullilove of the Superior Court of New Jersey held five days of hearings on Petitioner's motion for a new trial, after which Judge Fullilove denied the motion.  Petitioner appealed, and the Appellate Division affirmed.  The New Jersey Supreme Court denied certification.

The Supreme Court has expressly held that "the existence of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." Townsend v. Sain, 372 U.S. 293, 317 (1963); see also Sanders v. Nunn, No. 01-2336, 2006 WL 231669, *5 (D.N.J. Jan 31, 2006).  "For claims based on newly discovered evidence to state a ground for federal habeas relief, they must relate to a constitutional violation independent of any claim of innocence."  Johnson v. Bett, 349 F.3d 1030, 1038 (7th Cir. 2003) (citing Herrera v. Collins, 506 U.S. 390 (1993)); see also Stamiello v. Parrish, 2006 WL 736174, 3 (D.N.J. 2006). "Where the 'newly discovered evidence' consists of witness recantations of trial testimony . . . most courts decline to consider it in the absence of any showing that the prosecution knowingly proffered false testimony or failed to disclose exculpatory evidence, or that petitioner's counsel

30

was ineffective." Coogan v. McCaughtry, 958 F.2d 793, 801 (7th Cir. 1992) (cited in Johnson, 349 F.3d at 1038).

The petition before this Court cannot be read to suggest any independent constitutional violation in connection with Petitioner's "newly discovered evidence" claim.  Petitioner sought and received a full hearing on his claim before Judge Fullilove.  Judge Fullilove heard several days of testimony and concluded that the victim's recantation was not credible and that Petitioner therefore was not entitled to a new  trial.  Ground Six states a state-law claim that the trial court abused its discretion in failing to grant him a new trial.  This claim is not cognizable in a federal habeas court absent an independent constitutional violation

ii. Alleged Failure to Provide Medical Report to the Defense

In Ground Seven, Petitioner contends that he was entitled to the full medical records of the victim at the time of trial and that these records "undermine[] the basis for his conviction." Petitioner argues that the report contained exculpatory evidence that would have contradicted the victim's allegedly fabricated story and been material to his defense.  The State argues that there is no evidence indicating that the prosecutor failed to disclose part of the medical records or had any reason to suspect that the medical file was incomplete.

Petitioner raised this issue during his initial hearing for post-conviction relief before Judge Degnan, see Ex. 37 at 14, 31, on appeal from Judge Degnan's denial of post-conviction relief, see Ex. 15 at 4, and again as part of his motion for a new trial, see Ex. 28 at 33.  During oral argument on Petitioner's motion for a new trial, Judge Fullilove considered Petitioner's claim that the medical reports contained exculpatory evidence.  Judge Fullilove concluded that

31

the remaining pages of the report "do not, in fact, indicate that these things did not happen."  Ex.

38 at 13-14.  Before hearing testimony on the issue of recantation, Judge Fullilove noted,

> But you see, the problem I have with what you're saying is that the medical
> records exonerates and proves it false.  And all I'm saying is that's not the
> case. . . . They are not physical evidence that clearly indicate that there was – that
> these acts took place.  But it doesn't say that it didn't happen and it does not prove
> that it did not.

Ex. 38 at 15.  Judge Fullilove's written opinion denied Petitioner's motion for a new trial, but did

not discuss Petitioner's claim based on the medical records.  On appeal of Judge Fullilove'

denial, the Appellate Division affirmed without discussing this issue, other than to note that

"[t]he remaining arguments do not require discussion."  Ex. 30 at 9.

The Court reads Petitioner's allegation that the prosecutor withheld exculpatory evidence

as asserting a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  In <u>Brady</u>, the Supreme Court

held that "the suppression by the prosecution of evidence favorable to and requested by an

accused violates due process where the evidence is material either to guilt or to punishment,

irrespective of the good faith or bad faith of the prosecution."  <u>Id.</u> at 87.  The Court discussed

<u>Brady</u> in <u>United States v. Agurs</u> and held that Brady "arguably applies in three quite different

situations. Each involves the discovery, after trial of information which <u>had been known to the</u>

<u>prosecution</u> but unknown to the defense."  427 U.S. 97, 103 (1976) (emphasis added).  As the

First Circuit has held, "the rigors of <u>Brady</u> usually do not attach to material outside the federal

government's control."  <u>United States v. Bender</u>, 304 F.3d 161, 163 (1st Cir. 2002) (quoting

<u>United States v. Sepulveda,</u> 15 F.3d 1161, 1179 (1st Cir.1993)).  As a result, "[t]o comply with

<u>Brady</u> the individual prosecutor has a duty to find any evidence favorable to the defendant that

was known to those acting on the government's behalf."  <u>Bender</u>, 304 F.3d at 164.

In the case at bar there is no evidence that the prosecutor had either actual or constructive knowledge of the missing pages, see United States v. Risha, 445 F.3d 298, 307 (3d Cir. 2006) (discussing a prosecutor's constructive knowledge when she should have known of the exculpatory evidence), or that she withheld any portion of the report.  Under such circumstances, the rule of Brady and Agurs does not apply.  The prosecutor stated at the petitioner's post-conviction relief hearing that

> [a]ll of the medicals that I have were turned over to defense counsel.  The fact that he did not have some parts of those medical put both of us in the same position, which basically was that neither one of us had the additional reports.  And, quite frankly, I don't know where the additional medical reports came from.  They were ordered.  They were subpoenaed.  And they should have been turned over in total.  For whatever reason, they weren't.

Ex. 37 at 16.  Petitioner did not challenge the prosecutor's assertion before the state courts, and does not challenge it before this Court.[14]  Because the missing pages of the medical report were

---

[14]     Even assuming that the prosecutor had the victims' complete medical report at the time of Petitioner's trial, Petitioner's Brady claim still fails. "[T]o establish a Brady violation requiring relief, a defendant must show that (1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." Lambert v. Blackwell, 387 F.3d 210, 252 (3d Cir. 2004).  "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 677, 682 (1985).

The content of the remaining pages of the medical report does not undermine the Court's confidence in the outcome, and it is therefore not "material" under Bagley.  At most, the medical records at issue might have been impeachment material.  As noted above, Judge Fullilove considered and rejected the argument that the medical report was clearly exculpatory, concluding that "that's not the case," because the missing portion of the report "doesn't say that it didn't happen and it does not prove that it did not."  The mere possibility that the report could have been used to impeach the victim does not create a "reasonable probability" that the outcome would have been different.

Additionally, even without the missing pages of the report Petitioner was able to argue that the medical reports did not support the victim's story.  In his summation, defense counsel stated: "[l]ook at the medical testimony. Everything is negative.  It doesn't show that she

33

unknown to the State, the state courts' rejection of Petitioner's <u>Brady</u> argument was neither contrary to nor an unreasonable application of federal law.

### III.  CONCLUSION

Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

**ACCORDINGLY** it is on this 3rd day of June, 2008

**ORDERED** that the petition for a writ of habeas corpus is **DENIED**; and it is further

**ORDERED** that no certificate of appealability shall issue; and it is further

**ORDERED** that this case is **CLOSED**.

/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**

---

was beaten up; it doesn't show she was forced – that sex was forced upon her in that motel. You will have this (Indicating) in the juryroom.  Everything is negative."  Ex. 34 at 134.  The jury found Petitioner guilty notwithstanding the absence of any physical signs of the rape. Consequently, it is not "reasonably probable" that the information contained in the remaining pages of the medical report would have led to a different verdict. Because the Court finds that it is not "reasonably probable" that the outcome of the case would have been different if petitioner had the medical report, the report is not "material" under <u>Brady</u> and its progeny.  For this alternative reason, the Court finds that the state courts' rejection of Petitioner's <u>Brady</u> claim was neither contrary to nor an unreasonable application of federal law.